ROBERT CASPERSON v. HANNAH C. CASPERSON AND WILLIAM S. CASPERSON, EXECUTORS OF WILLIAM S. CASPERSON, DECEASED.

Argued June 11, 1900—Decided November 12, 1900.

Where, upon the trial of an issue joined, accounts are involved in the determination of the case, a court of law is not without jurisdiction to settle the controversy between the parties. In matters of account the jurisdiction of the courts of law and the courts of.equity, are concurrent and the court which first obtains jurisdiction should dispose of the whole matter in the litigation.

---

On contract. On rule to show cause.

Before Depue, Chief Justice, and Justices Gummere, Ludlow and Fort.

For the plaintiff, *William T. Hilliard.*

For the defendants, *I. Oakford Acton.*

The opinion of the court was delivered by

Fort, J.   The declaration in this case was upon the common counts and had annexed thereto a claim founded on a balance of cash due to Joseph L. Casperson of $1,673.69, of which claim the plaintiff was the assignee. The rule to show cause in this case reads: "That the defendant show cause before the Supreme Court, at the next term, why the verdict in the case should not be set aside and a new trial granted." The record shows that there was no verdict rendered, but that an order was made by the trial justice at the end of the evidence, directing that a nonsuit be entered, and in disposing of this rule it will be treated as a rule to show cause why the nonsuit should not be taken off and a new trial granted.

By the evidence in the cause it appears that Joseph L. Casperson was a merchant in the city of Salem, in this state, engaged in the clothing, hats, caps and gents' furnishing

goods business. On the 20th day of February, 1884, Joseph failed, and made an assignment to his brother, William R. Casperson, whose executors are the defendants in this suit. It appears that William R. took upon himself the burden of the assignment and settled his accounts as assignee at the January Term, 1885, of the Orphans' Court of Salem county. In this suit, evidence was taken and much seems to have been made of the fact, in the disposition made of the case, that this assignment had been made. In our view this was not at all material to the issue being tried. Neither the plaintiff or the defendants are creditors of Joseph L. Casperson, and in this proceeding the right of no creditor of Joseph L. Casperson is involved. Whether the assignment was or was not a fraud, as is attempted to be shown, is of no consequence as between the parties to this litigation. So far as the assignment is concerned, it appears that William, the assignee, took possession of the property of Joseph, and that the stock of goods assigned to him was sold at public auction and bought in by one Wood, acting, it is claimed, for William, whom it is claimed, was acting in the interest of Joseph in the sale. Joseph and William were brothers. Whether these facts are true or not, whether there was an intent to defraud or not, is of no consequence on the issue here and should have been so treated at the trial.

The testimony in the case is, that after the assignment and the sale of the stock to Wood (whom it is claimed acted for William) for $751.30, Joseph repurchased from his brother William, who had taken the stock from Wood, the entire stock as it stood in the place of business of Joseph, as it had been sold by the assignee. This transaction is testified to by Charles Casperson, who is a brother of both William and Joseph, and his testimony is clear. He says that soon after the sale and purchase by Wood for W. R. Casperson, that W. R. sold the stock at the same price that it had been bought back to Joseph, who took immediate possession thereof. From this time on the business was carried on by Joseph, in the name of William, although William, as will appear from the testimony of the plaintiff, had no interest

whatever in the business. The testimony of Mr. Ayres. who was a clerk during practically all the time the business was conducted prior to the death of William and Joseph, is that the moneys received from the business was carried to William and entered by him on a pass-book, or upon the stubs of his check-book. Charles Casperson, the brother, was also engaged about the business at times, and he testifies to the same method of conducting the business. The pass-book and the stub of the check-book upon which entries were made of moneys delivered by Ayres or Joseph or Charles or other persons to William, are all in the handwriting of William. They were admitted in evidence and were clearly admissions of William of the receipt of the moneys in question. It appears that this method of doing business ceased between the parties prior to their death and on or about the date stated in the account attached to the declaration, viz., June 8th, 1891. The pass-book and check-book in evidence and other papers introduced by the plaintiff, show that at that time there was due from William to Joseph the sum of $1,673.69. Ayres also testifies to admissions of the existence of this amount of indebtedness by William to Joseph in his (Ayres) presence, and Charles Casperson, the brother, testifies to like admissions and statements upon a number of occasions. Charles testifies that upon one occasion William came to his house, a house which was owned in part by William, but which Charles occupied, and stated that he wished that he could sell the house in order that he might get cash to settle the debt which he owed to Joseph, and Charles states in the same connection that he referred to the amount of indebtedness as being the amount shown on the book in which the entries had been made. When the plaintiff rested, upon the question of fact as to whether William R. Casperson, in his lifetime, was indebted to Joseph L. Casperson in $1,673, there was no controversy. The case was clear and specific and the amount was a balance made by William himself. There were no difficulties and no complications of any kind at this stage of the case.

In addition to the account, it appears in evidence by Wil-

liam's will that he admitted that he had an unsettled matter with his brother and it also appears by admission, that William's executors, the defendants in this case, on March 13th, 1893, transferred, without question or consideration, by bill of sale, all the personal property in the store which had been occupied by Joseph and conducted in the manner hereinbefore stated, to the plaintiff in this case, who is the son of Joseph, thus leaving the only disputed matter between the plaintiff and William's executors this item of $1,673.

The pleas in this case were the general issue and the statute of limitations. The account was a running account and the admission of the balance—$1,673.69—on June 8th, 1891, by an entry in the handwriting of William to that effect in the pass-book referred to, would, if the suit in this case was brought within six years from that date or rather six years and six months, as the defendants are executors, relieve the bar of the statute. Joseph died in 1894, and William died September 23d, 1892. William left a will which was probated the 5th day of October, 1892, by which the defendants were appointed executors. There was testimony also in the cause of promises by William made as late as 1892, and if there were payments ·on account or a balance struck within six years, or the will of William acknowledged this indebtedness and its date was within six years of the commencement of this suit, these were facts from which the jury could have found that there was a promise or an acknowledgment in writing within the statute. Clearly the entry of June 8th, 1891, being in the handwriting of the defendant and being within six years, the plaintiff was entitled to go to the jury on both questions raised by the pleas.

The defence in this case developed nothing that was material to the issue and nothing was testified to that changed the *status* of the· case at the time the plaintiff rested. One statement, which it was claimed that Hannah C. Casperson, one of the executors of William, had made, was denied by her and some impeachments of other testimony was attempted, but there was nothing in the case of the defend· ants which in anywise affected the situation at the time the

plaintiff rested and we think that the case should have gone to the jury.

The rule upon which the trial justice seems to have directed the nonsuit was that accounts were involved and that a trust existed on William's part, arising out of the fraudulent character of the assignment and the subsequent proceedings, and that, therefore, a court of law had no jurisdiction to dispose of it, and that a court of equity only could settle the matter between the parties. But the testimony does not justify that theory. The plaintiff claimed $1,673.69, with certain computations of interest, and eliminating the suggestion of the fraudulent character of the assignment in the case, as we think should have been done, the controversy was one of easy settlement. Even if the accounts had been involved and of the character suggested, the trial court was not without jurisdiction to settle the controversy. The jurisdiction of the courts of law and equity, in matters of account of this character at least, are undoubtedly concurrent, and whichever court first obtains jurisdiction should dispose of the whole matter in the litigation. *Sweeny* v. *Williams,* 9 *Stew. Eq.* 627.

Some objection was made at the trial to the assignment from Joseph to his son Robert, the plaintiff in this case, but the assignment itself is not printed as an exhibit in the cause, and we have taken it for granted that it was within the statute which authorizes an assignee to sue. No objection appears to have been made to its admission, and the record simply says that it bore date the 6th day of March, 1893, which was before the commencement of this suit, and we have treated it, therefore, as sufficient to maintain the suit in the disposition of this rule.

We think, therefore, that the rule should be made absolute and a new trial granted.